IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHARLES V. CLEMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | CIVIL ACTION NO. 07-G-0027-S |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Charles V. Clemons, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Supplemental Security Income benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether he has a severe impairment;

(3) whether his impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform his past work; and

>   (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ Jack F. Ostrander determined the plaintiff met the first two tests, but concluded that while he has an impairment or impairments considered "severe," his "impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1." [R. 24]. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." Foote, at 1559.

## THE STANDARD FOR REJECTING THE TESTIMONY
## OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in

4

significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the

articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

ALJ Ostrander found that the plaintiff has the following severe impairments: "status post fusion of the right ankle, bilateral sural[1] neuropathy, back, knee, and shoulder pain, anxiety, depression, and substance abuse. . . ." [R. 15].  The ALJ found that the plaintiff could not perform his past relevant work, but at Step Five, found that the plaintiff could perform a limited range of light work.  [R. 19].

The plaintiff has been under the care of treating psychiatrist Thomas LeCroy, M.D., of Alabama Psychiatric Services, P.C., since July 13, 2000.  At that time, Dr. LeCroy diagnosed cocaine abuse and anxiety.  [R. 198].  The plaintiff was referred to

---

[1] "Pertaining to the calf of the leg."  Dorland's Illustrated Medical Dictionary 1612 (28th Ed. 1994).

Thomas C. Brecht, Ph.D., for a psychological evaluation, who performed extensive testing. [R. 190-192]. Dr. Brecht's testing revealed:

> elevated clinical scales in reducing order of magnitude were as follows: Sadistic Personality; Anxiety Disorder; Narcissistic Personality; Anitsocial Personality; Depressive Personality; Alcohol Dependence; Dysthymic Disorder.
>
> Axis I considerations in this case would include the following: Generalized Anxiety Disorder, Alcohol Abuse or Adjustment Disorder with depressed mood.
>
> Axis II considerations in this case would include the following: Sadistic Personality Disorder with Narcissistic Personality traits, Antisocial Personality traits with Negativistic (Passive-aggressive) Personality features.

[R. 191]. On February 7, 2002, the plaintiff was seen again by Dr. LeCroy, who diagnosed Major depression, recurrent, severe (rule out bipolar), and panic disorder. [R. 186]. Dr. LeCroy assessed the plaintiff's GAF at 55[2], and prescribed an increase in Zoloft, Seroquel for insomnia and anxiety attacks. [R. 186-187]. Lithium was prescribed for bipolar disorder [R. 185]. The plaintiff presented at Alabama Psychiatric Services on July 16, 2004, stating that he had not been on his medications of lithium, Seroquel and Prozac for about six months, and complaining of an "increased affect instability as well as

---

[2] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A rating of 51-60 reflects: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers.)" DSM-IV-TR at 34 (emphasis in original).

depression." [R. 183]. On March 16, 2005, he reported that lithium helps with his irritability, and requested a refill, which was given, as well as Remeron, an antidepressant drug. [R. 180]. On September 9, 2005, progress notes indicated that the plaintiff was depressed, but not suicidal. [R. 179]. On January 23, 2006, Dr. LeCroy stated:

> This letter is to inform you that Mr. Charles Clemons has been under my care since 07/13/00. He is being treated for Bipolar Disorder with Remeron 30 mg at bedtime and Lithium Carbonate 300 mg, two twice daily. He also has a diagnosis of Polysubstance Abuse but to my knowledge has had only one relapse since September 2002 and is currently drug free except for the medicine I've prescribed. Compliant with medication, he continues to experience racing thoughts and it is my opinion that he, because of bipolar symptoms, is unable to engage in and maintain gainful employment.

[R. 243].

In his decision, the ALJ refused to credit Dr. LeCroy's testimony, opting instead to rely on a report[3] by the Disability Determination Service's reviewing psychiatrist "because it is more consistent with the other evidence of record. . . ." [R. 17]. This conclusion is not supported by substantial evidence. The evidence or record of the plaintiff's treating psychiatrist exhibits a treatment of more than five years[4], which

---

[3] That reviewing psychiatrist's report found only mild limitations of daily activities, social functioning and ability to maintain concentration. [R. 157-169].

[4] The ALJ characterized the treatment as "intermittent," but concluded that the plaintiff's psychiatric treatment "appears to be primarily for substance abuse. . . ." [R. 17]. While it is true that the plaintiff was diagnosed with polysubstance abuse, it cannot be ignored that a treating psychiatrist diagnosed bipolar disorder as well as anxiety and depression. Moreover, Dr. LeCroy stated that the plaintiff had only one relapse since September 2002. The ALJ is not free to base his decision on such unstated reasons or hunches. Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

(continued...)

documents more than mild limitations.  Because the ALJ failed to properly refute Dr. LeCroy's testimony, as a matter of law it must be accepted as true.

The ALJ found that the plaintiff had the following residual functional capacity:

> to lift and carry twenty pound occasionally and ten pounds frequently, stand and walk up to six hours per eight-hour day, and sit up to six hours per eight-hour day.  The claimant is unable to balance, stoop, kneel, crouch, crawl, and climb ramps and stairs on more than an occasional basis, unable to push/pull with the right lower extremity, and unable to reach overhead with the right upper extremity.  The claimant requires jobs that can be performed with moderate pain and its moderate effect on the ability to concentrate, as well as jobs that do not involve concentrated exposure to heat or cold, or work at unprotected heights, around dangerous moving equipment, or the use of ladders, ropes, or scaffolds.

[R. 16].  Even though the ALJ found that anxiety and depression were severe impairments, he failed to include the plaintiff's mental limitations in his RFC.  Moreover, the plaintiff's mental impairments were not included in the ALJ's hypothetical questions to the vocational expert.

---

[4] (...continued)
An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians:  "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary."  Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988).
. . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his private or personal capacity;  however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840-41 (11th Cir. 1992)(emphasis in original).

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 27 May 2008.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.